| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK BRADY,

    Plaintiff,               No. 1:06-cv-00136 ALA (P)

    vs.

TIMOTHY FISHBACK, et al.,

    Defendants.           <u>ORDER</u>

_____/

Patrick Brady ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. On February 7, 2008, Plaintiff filed a complaint against Defendants Fishback, Juarez and Villa for deliberate indifference to his serious medical needs in violation of his Eighth Amendment constitutional rights.[1] The gravamen of Brady's complaint is that Defendants ignored his serious mental health needs by

---

[1] Plaintiff's original complaint named the California Department of Corrections and Rehabilitation (CDCR) as a defendant, and included a due process claim, an ADA claim and three state law claims. (Doc. 1). On March 22, 2006, the Court issued a screening order pursuant to 28 U.S.C. § 1915A(a), dismissing the CDCR and all claims except the Eighth Amendment medical care claim from Brady's complaint. (Doc. 7). The Court ordered Brady to file an amended complaint curing the deficiencies identified by the Court, or to notify the Court that he wished to proceed only against Defendants Fishback, Juarez and Villa on the Eighth Amendment claim. On October 18, 2006, Plaintiff filed a notice to the Court that he intended to proceed on the Eight Amendment claim against Defendants Fishback, Juarez and Villa only.

1

failing to renew his prescription for Ritalin and implementing an unwritten policy "proscribing Ritalin from being prescribed for ADD/HD." (Doc. 1).

On March 31, 2008, Defendants Juarez and Villa filed a motion for summary judgment on the grounds that there is no genuine dispute as to any material fact, and they are entitled to judgment as a matter of law because Brady continually received treatment for his ADHD by Defendants. (Doc. 55). Defendant Fishback also filed a motion for summary judgment on March 31, 2008, seeking dismissal on the ground that there is no dispute of material fact and he is entitled to judgment as a matter of law because he did not issue a written or oral policy that precluded the prescription of Ritalin to Brady. (Doc. 54).

The Court granted Plaintiff an extension of time to file his opposition to Defendants' motions for summary judgment to allow Plaintiff additional time for discovery. (Doc. 62). On February 24, 2009, after having completed extended discovery, Plaintiff filed an opposition to Defendants' motions for summary judgment. (Doc. 113). Defendants filed replies. (Docs. 115 and 116). The Defendants' motions for summary judgment are granted.

**I**

Viewing the record as a whole and in the light most favorable to the non-moving party, the facts in this case are as follows. Brady has been incarcerated within the California Department of Corrections since January 1996. On September 9, 1998, Brady had a security housing unit mental health screening which revealed that he was suffering from no mental illnesses. On March 3, 1999, and August 19, 1999, Brady underwent additional reviews with a psychologist which showed that Brady was not suffering from any mental illnesses. On January 6, 2000, Brady complained of anxiety. Since that time, during his incarceration at Corcoran State Prison, Brady has been seen by numerous psychiatrists who have treated him for anxiety, depression, and other mental disorders.

At all times relevant to the complaint, Defendant Jesus Juarez, M.D., was the Acting Chief Psychiatrist at Corcoran State Prison. Dr. Juarez never personally treated Brady; however,

as Acting Chief Psychiatrist at Corcoran State Prison, he may have renewed his prescriptions on occasion.

At various periods from April 2001 to August 2005, Defendant Simon Villa, M.D., worked as a staff psychiatrist at Corcoran State Prison on Yard B where Brady was housed. On April 12, 2001, Dr. Villa saw Brady for the first time. Brady informed Dr. Villa that he had been diagnosed previously as suffering with Attention Deficit Hyperactivity Disorder (ADHD) and was treated with Ritalin and Cylert. Brady requested treatment for his ADHD. Dr. Villa prescribed Cylert and requested that Brady produce documentation of his ADHD diagnosis. On June 28, 2001, Dr. Villa increased Brady's Cylert prescription based on Brady's complaint that he was unable to focus while under the current dosage. Brady's prior prescription for Zoloft, for depression, which had been discontinued, was renewed at that time. On both December 27, 2001 and March 22, 2002, Dr. Villa renewed Brady's prescriptions for Cylert and Zoloft. On May 14, 2002 Brady asked Dr. Villa to change him to Adderall, a psycho stimulant. Dr. Villa maintained Brady of the Cylert and Zoloft prescriptions. On May 22, 2002, Brady complained to a psychiatric technician that he wanted to be changed to Adderall.

On June 24, 2002, Brady saw psychiatrist Dr. Tuzon and asked to be taken off of Cylert. His request was denied. On July 25, 2002, Dr. Villa saw Brady and informed him that Cylert was being discontinued due to concerns over potential negative side effects. Brady again asked to be switched to Adderall. Dr. Villa prescribed Ritalin, an amphetamine, for Brady, based upon Brady's execution of a substance abuse agreement which specifically provided that "(1) the termination of stimulant medication is at the discretion of the physician; (2) one of the goals of treatment is the eventual discontinuation of stimulants; and (3) stimulant medication will be reviewed on a thirty-day basis at the prescribing physician's discretion." Brady's Ritalin dose started with 10 milligrams every morning. From August 23, 2002 to December 20, 2002, Brady's Ritalin dosage was incrementally increased due to Brady's complaints that the

prescribed dosage was wearing off quickly and he was unable to focus.[2] During this period, Brady's Zoloft prescription was also increased to 150 milligrams every afternoon due to Brady's purported inability to concentrate. On May 15, 2003, Brady was seen by Dr. Tuzon and requested that he be prescribed Klonopin, a medication used to treat seizures and panic disorders. Brady also complained of anxiousness, depression and insomnia. Brady was prescribed Remeron in addition to his Zoloft prescription. In June 2003, Brady refused to take his antidepressants.

On January 26, 2004, February 9, 2004, May 24, 2004, and March 11, 2004, Dr. Villa continued to renew Brady's Ritalin prescription. Over this period, Dr. Villa increased the Ritalin prescription to the maximum dosage of 60 milligrams a day, based upon Brady's continued complaints of poor concentration.

On June 18, 2005, Dr. Villa indicated to Brady that Ritalin was being discontinued and that prisoners taking Ritalin for ADHD would have their prescriptions terminated. On June 20, 2005, Dr. Villa ordered Brady's Ritalin prescription to be tapered down over the following six weeks. On August, 19, 2005, Dr. Villa prescribed Strattera for Brady, which is used for adults diagnosed with ADHD and unlike Ritalin is not a psycho-stimulant. Strattera is an FDA-approved medication for adult ADHD. "Straterra is not a psycho-stimulant, but rather works on adults with ADHD by controlling impulsivity. Specifically, Strattera is a norepinephrine reuptake inhibitor, a class of ADHD treatment that works differently from the other ADHD medications available. Norepinephrine is thought to have important input into the central nervous system control of attention, concentration, cognition, mood, emotions, and blood pressure." This was Brady's last visit with Dr. Villa. Def.'s Mot. Summ. J. ¶ 24. Brady alleges that Strattera has had "severe side affects including nausea, dizziness, and trouble urinating."

---

[2]Dr. Villa increased Brady's dosage on August 23, 2002, October 25, 2002, December 20, 2002. In addition to Dr. Villa, Dr. Taylor, a psychiatrist at Corcoran, increased Brady's dosage on April 14, 2003. Def.'s Mot. Summ. J. ¶ 15.

On August 8, 2005, Brady filed a "Reasonable Modification or Accommodation Request" complaining that his "meds were cut off!"and requesting that his Ritalin prescription be renewed. On August 30, 2005, Dr. Villa reviewed and denied Brady's request on the grounds that Ritalin "is now non-formulary – no longer prescribed unless approved by the CMO – another medication can also be used for the problem or condition."

On September 15, 2005, Brady stopped taking Strattera due to its side-effects and was placed on Wellbutrin and Remeron, which he subsequently refused to take because of their side-effects and was later placed upon Effexor. Brady filed a Second Level appeal, Brady was interviewed by Dr. Juarez on October 3, 2005 regarding his appeal. The Appeal Response was as follows:

> Per Departmental policy, the medication you request is now a non-formulary medication and is no longer prescribed by our physicians unless approved by the Health Care Manager on a case-by-case basis. This decision was made based upon a cost-benefit evaluation an/or wether the drug is susceptible to abuse. Other drugs of comparable quality are available and can be prescribed by your physician. If you desire another type of medication for your problems, you need to discuss this with your primary psychiatrist. The issue of Ritalin (Methylphenidate) will be revisited after a statewide memo is prepared by Dr. Timothy Fishback.

Pltf. Opp'n Exh. A, Second Level Appeal.

Defendant Timothy Fishback, M.D., formerly Chief psychiatrist for the Division of Correctional Health Care Services at the California Department of Rehabilitation (CDCR), "was responsible for the development of policies and standards for the mental health program to ensure compliance with existing polices and regulations. The position also entailed providing technical advice to advisory committees and mental health professionals engaged in the delivery of mental health services . . . ." Dr. Fishback has never met or had personal contact with Brady. Dr. Fishback did not have a patient-physician relationship with Brady; he never provided, denied, or interfered with any medical care for Brady. At no time did Dr. Fishback directly supervise Drs. Villa or Juarez. Dr. Fishback was not responsible for training Drs. Villa and Juarez.

| | |
|---|---|
| 1 | Brady appealed the Second Level decision to the Director's Level. The Chief of the |
| 2 | Inmate Appeals Branch denied Brady's appeal on December 7, 2005, explaining as follows: |

> On December 5, 2005 the examiner contacted the Medical Appeals Analyst at COR, T. Barbeiro, to inquire as to the appellant's mental health care. It was learned that the appellant is currently receiving an anti-depressant medication. The appellant does see mental health staff on a regular basis as he is receiving the [Correctional Clinical Case Management System] CCCMS level of care. The CCCMS program avails the appellant to many areas of treatment and individual development. While a CCCMS inmate, the appellant received prompt access to mental health professionals for diagnosis and treatment. He receives continuity of care by the tracking of his progress and linkage to accessory services available to GP inmate (i.e., work assignments, school and vocational education programs.) The appellant also receives linkage to existing prerelease programs and parole outpatient treatment services for inmates about to parole.
>
> On December 5, 2005, the examiner also spoke to Health Care Services Division (HCSD) staff in Sacramento. It was learned that the memorandum by Dr. Fishback has not been completed at this time. However, the decision to no longer prescribe Ritalin to inmates with ADHD is a Headquarters decision and is statewide.
>
> On December 7, 2005, the examiner spoke to Dr. Juarez . . . [who explained] the discontinuation of Ritalin prescriptions at COR. He is familiar with the appellant and stated that [he] is able to function adequately in his daily living tasks. He did explain that the medication, Strattera, is the only medication approved to treat ADHD and the appellant requested to stop receiving that medication. While the appellant would prefer to receive stimulants, he will not receive those types of medications at this time.
>
> It is evident that the appellant disagrees with the mental health care treatment he is receiving at COR. While he might disagree with the medical opinions of the doctors, psychiatrist, and specialists at COR who have examined him and reviewed his Unit Health Record, he must realize that medical diagnosis and treatment recommendations can vary between facilities, specialists, and physicians throughout the CDCR. Each practitioner determines, at the time of treatment, the extent of treatment for the health care problem. The physicians and psychiatrists at COR must determine which medications will work best for the appellant's condition. The appellant cannot dictate what prescriptions he should be provided. The institution shall only provide medical services for inmates which are based on medical necessity and supported by outcome data as effective medical care. The appellant has not provided a compelling argument to warrant modification of the decision reached by the institution.

Pltf. Opp'n Exh. A, Director's Level Appeal, December 7, 2005.

After exhausting his administrative remedies, Brady filed this civil rights suit contending that his federal constitutional rights have been violated insofar as Defendants have failed

properly to treat him. Brady claims he is presently without any adequate medication to treat his ADD/HD. As a result of being taken off Ritalin, Brady also alleges that he has "become very depressed and extremely anxious" and has "lost the ability to function and live independently; is distrustful and humiliated."

**II**

To state a claim under section 1983, a plaintiff must allege that: (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006). "A person deprives another of a constitutional right, where that person does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir.2007) (quotations omitted). "[T]he requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* (internal quotations marks omitted).

Summary judgment is appropriate where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (under Rule 56, this Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law") "The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

"Once the moving party meets its initial burden, however, the burden shifts to the

non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted). "To show the existence of a 'genuine' issue, [Brady] must present some evidence establishing each element of [his] claims on which [he] would bear the burden of proof at trial." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

In opposing summary judgment, Brady must "go beyond the pleadings and, by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). "A verified complaint may be used as an opposing affidavit under Rule 56." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987)). "To function as an opposing affidavit, however, the verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence." *Id.* (citing Fed. R. Civ. P. 56(e); *McElyea*, 833 F.2d at 197; *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985)). Thus, Brady "must produce at least some 'significant probative evidence tending to support the complaint.'" *Celotex*, 477 U.S. at 324 (citations omitted).

**A**

Brady alleges that Defendants violated the Eighth Amendment by ignoring his serious mental health needs when they 1) "discontinu[ed] his viable, and successful treatment of ADD/HD with Ritalin through whim, caprice, and fraud"; and 2) "instituted an unwritten policy (and/or endorsed an unwritten policy) proscribing Ritalin from being presecribed for ADD/HD." (Doc. 1).

"Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration." *Lopez v. Smith*, 203 F.3d 1122, 1131

(9th Cir. 2000) (en banc). However, "not every breach of that duty is of constitutional proportions." *Id.* To establish a claim that inadequate medical care constitutes cruel and unusual punishment, the mistreatment must rise to the level of "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "'Prison officials are indifferent to prisoners' serious medical needs when they deny, delay, or intentionally interfere with medical treatment.'" *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted). The prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle*, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Thus, "[t]o prevail on an Eighth Amendment medical claim, [Brady] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and [he] must show that they chose this course in conscious disregard of an excessive risk to

[his] health." *Jackson*, 90 F.3d at 332.

Plaintiff's allegations against the defendants are insufficient to withstand summary judgment. Plaintiff has not produced any "significant probative evidence tending to support" the allegations in his complaint." *Celotex*, 477 U.S. at 324. Specifically, Plaintiff has provided no evidentiary support for his allegation that defendants "discontinu[ed] his viable, and successful treatment of ADD/HD with Ritalin through whim, caprice, and fraud." Furthermore, Plaintiff has also failed to show, that any of the alleged harm he suffered by not being provided with his preferred medication, was proximately caused by any deliberate indifference of any of the defendants. The record indicates that Brady has received a significant amount of mental health care. By Plaintiff's own admission, he has been treated continually for his mental health condition throughout his period of incarceration, by the defendant physicians, as well as by other medical staff.

Brady's dispute is over the kind of treatment he has been prescribed, which does not constitute deliberate indifference to his serious medical needs. *See e.g., Althouse v. Roe*, 542 F. Supp. 2d 543, 547 (E.D. Tex. 2008) (holding that "[t]he fact that prison officials do not make amphetamine-based medications [such as Ritalin] available to prisoners is not proof of deliberate indifference" where prisoner was given alternate treatment).

**B**

Brady's allegation that his federal constitutional rights have been violated by defendants' alleged institution of "an unwritten policy (and/or endorsed an unwritten policy) proscribing Ritalin from being prescribed for ADD/HD" is also unavailing. Although there appears to be a factual dispute regarding whether Dr. Fishback issued or endorsed a policy proscribing Ritalin from being prescribed for inmate, the dispute does not concern a material fact. The undisputed facts establish that Brady has been continually treated for his mental health condition. The policy within the CDCR concerning non-formulary medications is that they are not prescribed by unless approved by a Health Care Manager on a case-by-case basis. Brady was not approved for

such medication. Brady disagrees with the prison medical staff's determination of the correct course of treatment. The Ninth Circuit has repeatedly held that a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under §1983. See, e.g., *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)("A difference of opinion does not amount to a deliberate indifference to Sanchez' serious medical needs"); *Shields v. Kunkel*, 442 F.2d 409, 410 (9th Cir. 1971)("A difference of opinion between patient and physician without more, does not state a claim under section 1983"); *Mayfield v. Craven*, 433 F.2d 873 (9th Cir. 1970)("a difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under the Act"); *McKinney v. People of State of Cal.*, 427 F.2d 160 (9th Cir. 1970).

Therefore, Brady has failed to demonstrate that any of the Defendants were deliberately indifferent to his medical needs. *Farmer, 511 U.S. at 837; see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (holding that deliberate indifference cannot be shown where there is merely a disagreement about the course of medical treatment that should be provided).

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions for Summary Judgment (Docs. 54-55) are GRANTED;
2. The case is dismissed; and,
3. The trial date scheduled for April 14, 2009 is hereby VACATED.

///

DATED: March 6, 2009

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation